UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GREG NULMAN
TATYANNA KNYAZHESKY         :
        Plaintiffs,

    v.

MONEY WAREHOUSE INC.;       :     Civil Action No.
COUNTRYWIDE HOME LOANS, INC.

       Defendants.         :

## COMPLAINT

**A.   Jurisdiction and Venue**

1.   Jurisdiction over this matter is conferred upon this Court by the Truth in Lending Act (hereinafter "TILA"), 15 U.S.C. §1640(e), and 28 U.S.C. §§ 1331. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a).

2.   Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

**B.   Parties**

3.   Plaintiffs are natural individuals, married, who reside at and own 796 Bobwhite Lane, Huntingdon Valley, Pennsylvania 19006 [hereinafter "the property"].

4.   Defendant Money Warehouse Inc. is a Pennsylvania corporation engaged in the business of brokering and originating consumer mortgage loans throughout the United States.

1

5. Defendant, COUNTRYWIDE HOME LOANS, INC. [hereinafter "Countrywide"] is a corporation with its principal offices at 400 Countrywide Way, SV-34, Simi Valley, California 93065-6298. Money Warehouse assigned their interest in plaintiff's mortgage to Countrywide after the loan's origination.

6. Defendants are creditors within the meaning of TILA.

C. **Factual Allegations**

7. At the time of the events hereinafter described, plaintiffs had 1st and 2nd position mortgage loans on their home with World Savings Bank.

8. MW recommended a teaser rate "pick-a-payment" loan promised plaintiff Nulman that 1) they would receive a monthly payment lower than their current mortgage payments and 2) the loan principal would not go up if they made the minimum payment.

9. At all times herein, MW's loan officer spoke to plaintiff Nulman in their native language of Russian knowing that plaintiff Nulman had difficulty understanding the written English language.

10. On or about Friday, June 9, 2006, Plaintiffs signed loan documents for a rate loan of $312,000.00 loan with an interest rate adjustable to 9.95% and Notices of Right to Cancel to each borrower with a cancellation date of June 12, 2006 (see Ex. "A").

11. As reflected in the loan documents, plaintiffs' FICO credit scores were in excess of 750. When plaintiff Nulman questioned MW's loan officer after origination of the loan about the higher than expected payments, the loan officer told coldly told him the loan was made and there was nothing to discuss.

## **COUNT I. - TILA RESCISSION**

12. Plaintiffs re-allege and incorporate all prior paragraphs by this reference.

13. The loan was a residential mortgage loan subject to the Plaintiff's right of rescission as described by TILA, 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23).

14. Under 15 U.S.C. 1635 of the Federal Truth in Lending Act, defendant MW was required to provide to each borrower having an ownership interest in the property two (2) copies of Notice of Right to Cancel the loan in which it is disclosed to borrower the date of the transaction and the date three (3) business days in excess of date by which the transaction can be cancelled.

15. Because TILA's implementing regulation, Reg. Z, §226.2(6), defines "business day" as excluding Sundays, plaintiffs were only given two (2) business days to cancel.

16. Defendant MW failed to deliver the aforesaid "material" disclosures required by TILA as indicated.

17. Plaintiffs have a continuing right to rescind this transaction until receipt of all "material" disclosures described above, pursuant to 15 U.S.C. § 1635(a).

18. Under 15 U.S.C. § 1641(c), defendant Countrywide is liable for rescission of plaintiffs' loan as assignee.

19. As a result of the violations of TILA, pursuant to 15 U.S.C. §§1635(a) and 1640(a), Defendants are liable to Plaintiffs for:

a)  rescission of this transaction, including a declaration that Plaintiffs are not liable for any finance charges or other charges imposed by Defendants;

b) termination of any security interest in Plaintiffs' property created under the transaction;

c) return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with this transaction;

d) actual damages in an amount to be determined at trial;

e) an award of reasonable attorney's fees and costs.

### COUNT II – PENNSYLVANIA CONSUMER PROTECTION LAW

20. Plaintiffs re-allege and incorporate all prior paragraphs by this reference.

21. Defendant MW falsely represented the features of the loan including the monthly payment and amortization of the loan principal.

22. Defendants MW and Countrywide knew from plaintiffs' respective credit histories and other underwriting criteria that plaintiffs qualified for a loan with better interest rate terms but, by presenting plaintiffs with the loan, falsely represented that its terms were the best available to them.

23. Defendants knew the aforesaid representations were false.

24. Defendants knew these representations were material to plaintiffs accepting the loan.

25. Defendant MW intended that plaintiffs rely upon their shared cultural heritage and language as a basis for accepting the loan as the credit terms most favorable to them.

26. Defendant Countrywide intended that plaintiffs rely upon its status as the country's largest and best known mortgage lender to accept the loan as the credit terms most favorable to them.

27. Plaintiffs were unaware of the falsity of defendants' representations.

28. Plaintiffs, with English being their second language and having no professional and little practical experience with mortgage loans, had a right to rely upon the aforesaid misrepresentations of plaintiffs.

29. Plaintiffs aforesaid reliance proximately caused plaintiffs' injury in the form of increased credit costs.

30. Defendant Countrywide has engaged in a pattern and practice of selling high price loans to borrowers who qualify for better credit terms with the sole purpose of increasing their profits at borrowers' expense.

31. The actions and omissions of Defendants as described above constitute violations of the following sections of the Unfair Trade Practices and Consumer Protection Law (UTPCPL) 73 Pa.C.S.A. § 201-1 et. seq., including but not limited to the violation of 73 P.S. § 201-2(4):

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>
> (vii) Representing that goods or services are of a particular standard, quality or grade;
>
> (ix) Advertising goods or services with intent not to sell them as advertised;

      (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

      (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

WHEREFORE, Plaintiffs demand judgment against defendants for violations of the Unfair Trade Practices and Consumer Protection Law for:

    (a)    Actual and compensatory damages;

    (b)    Treble damages;

    (c)    Punitive damages;

    (d)    Attorney fees and costs; and

    (e)    Such other and further relief as the Court shall deem just and proper.

Dated: March 31, 2009

/s/ Matthew Weisberg, Esquire
PROCHNIAK WEISBERG, P.C.
Matthew Weisberg, Esquire
Pa. Id. No. 85570
7 S. Morton Ave.
Morton, PA 19070
(610) 690-0801


/s/ RC935
ROBERT P. COCCO, P.C.
By: Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 351-0200

Attorneys for Plaintiff