UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GREG NULMAN                           :
TATYANNA KNYAZHESKY                   :
        Plaintiffs,           :   Civil Action No. 09-1503
   v.                                 :
                              :
MONEY WAREHOUSE INC.;                 :   JURY OF TWELVE (12) JURORS DEMANDED
COUNTRYWIDE BANK, FSB                 :
N/K/A BANK OF AMERICA, N.A.           :
        Defendants.           :

## SECOND AMENDED COMPLAINT

**A.   Jurisdiction and Venue**

1.   Jurisdiction over this matter is conferred upon this Court by the Truth in Lending Act (hereinafter "TILA"), 15 U.S.C. §1640(e), and 28 U.S.C. §§ 1331. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a).

2.   Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

**B.   Parties**

3.   Plaintiffs are natural individuals, married, who reside at and own 796 Bobwhite Lane, Huntingdon Valley, Pennsylvania 19006 [hereinafter "the property"].

4.   Defendant Money Warehouse Inc. ["MW"] is a Pennsylvania corporation engaged in the business of brokering and originating consumer mortgage loans throughout the United States.

5. Defendant, Countrywide Bank, FSB n/k/a Bank of America, N.A. [hereinafter "Countrywide"] is a corporation with its principal offices at 400 Countrywide Way, SV-34, Simi Valley, California 93065-6298. Money Warehouse assigned their interest in plaintiff's mortgage to Countrywide after the loan's origination.

6. Defendants are creditors within the meaning of TILA.

C. **Factual Allegations**

7. At the time of the events hereinafter described, plaintiffs had 1st and 2nd position mortgage loans on their home with World Savings Bank.

8. MW recommended a teaser rate "pick-a-payment" loan promised plaintiff Nulman that 1) they would receive a monthly payment lower than their current mortgage payments and 2) the loan principal would not go up if they made the minimum payment.

9. At all times herein, MW's loan officer spoke to plaintiff Nulman in their native language of Russian knowing that plaintiff Nulman had difficulty understanding the written English language.

10. On or about Friday, June 9, 2006, Plaintiffs signed loan documents for a rate loan of $312,000.00 loan with an interest rate adjustable to 9.95% and Notices of Right to Cancel to each borrower with a cancellation date of June 12, 2006 (see Ex. "A").

11. As reflected in the loan documents, plaintiffs' FICO credit scores were in excess of 750. When plaintiff Nulman questioned MW's loan officer after origination of the loan about the higher than expected payments, the loan officer told coldly told him the loan was made and there was nothing to discuss.

**Business Relationship between Money Warehouse and Countrywide**

12.  Upon information and belief, Countrywide's role in this transaction was as the correspondent lender to defendant MW who acted as the "Table Funding Lender".

13.  Upon information and belief, MW had insufficient capital to close loans on its own and therefore relied upon a table funding arrangement to close plaintiffs' and other loans through Countrywide.

14.  Upon information and belief, MW brokered the loan's terms using Countrywide's underwriting software and underwriting standards such that the loan was pre-sold to Countrywide through a revolving purchase agreement between Countrywide and MW to fund such loans.

15.  Upon information and belief, MW immediately assigned the loan to Countrywide after its origination.

## COUNT I. - TILA RESCISSION

16.  Plaintiffs re-allege and incorporate all prior paragraphs by this reference.

17.  The loan was a residential mortgage loan subject to the Plaintiff's right of rescission as described by TILA, 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23).

18.  Under 15 U.S.C. 1635 of the Federal Truth in Lending Act, defendant MW was required to provide to each borrower having an ownership interest in the property two (2) copies of Notice of Right to Cancel the loan in which it is disclosed to borrower the date of the transaction and the date three (3) business days in excess of date by which the transaction can be cancelled.

19. Because TILA's implementing regulation, Reg. Z, §226.2(6), defines "business day" as excluding Sundays, plaintiffs were only given two (2) business days to cancel.

20. Disclosure of the rescission date must be "clear and conspicuous" as required by 15 U.S.C. §1635(a).[1]

21. The "clear" portion of the standard mandates that the court determine whether the disclosure notice in question is capable of two plausible but different interpretations.[2]

22. Consumers like plaintiffs could plausibly believe that their right to cancel had ended once the June 12 cancellation date had passed.

23. TILA does not impose upon a consumer the duty of completing the notice's correct rescission date.[3]

24. Defendant MW failed to deliver the aforesaid "material" disclosures required by TILA as indicated.

25. Plaintiffs have a continuing right to rescind this transaction until receipt of all "material" disclosures described above, pursuant to 15 U.S.C. § 1635(a).

26. Under 15 U.S.C. § 1641(c), defendant Countrywide is liable for rescission of plaintiffs' loan as assignee.

---

1 See 15 U.S.C. § 1635(a); Reg. Z §§ 226.5(a)(1), 226.15(b), 226.17(a)(1), 226.23(b).
2 Handy v. Anchor Mortgage Corp., 464 F.3d 760 at 765-766 (7th Cir. 2006), Reynolds v. D. & N. Bank, 792 F. Supp. 1035 (E.D. Mich. 1992), Porter v. Mid-Penn Consumer Discount, 961 F.2d 1066 (3d Cir. 1992); Williams v. Empire Funding Corp., 109 F. Supp. 2d 352 (E.D. Pa. 2000); Apgar v. Homeside Lending, Inc. (In re Apgar), 291 B.R. 665 (Bankr. E.D. Pa. 2003).

3 See Johnson v. Chase Manhattan Bank, 2007 U.S. Dist. LEXIS 50569, Semar v. Platte Valley Federal Sav. & Loan Ass'n, 791 F.2d 699, 706 n.15 (9th Cir. 1986) (rescission notice that omitted expiration date, although it stated that right expired three business days after July 16, was violation); Aquino v. Public Fin. Consumer Discount Co., 606 F. Supp. 504 (E.D. Pa. 1985); In re Armstrong, 288 B.R. 404 (Bankr. E.D. Pa. 2003).

27. As a result of the violations of TILA, pursuant to 15 U.S.C. §§1635(a) and 1640(a), Defendants are liable to Plaintiffs for:

a) rescission of this transaction, including a declaration that Plaintiffs are not liable for any finance charges or other charges imposed by Defendants;

b) termination of any security interest in Plaintiffs' property created under the transaction;

c) return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with this transaction;

d) actual damages in an amount to be determined at trial;

e) an award of reasonable attorney's fees and costs.

## COUNT II – PENNSYLVANIA CONSUMER PROTECTION LAW

28. Plaintiffs re-allege and incorporate all prior paragraphs by this reference.

29. Defendant MW falsely represented the features of the loan including the monthly payment and amortization of the loan principal.

30. Defendants MW and Countrywide knew from plaintiffs' respective credit histories and other underwriting criteria that plaintiffs qualified for a loan with better interest rate terms but, by presenting plaintiffs with the loan, falsely represented that its terms were the best available to them.

31. Defendants knew the aforesaid representations were false.

32. Defendants knew these representations were material to plaintiffs accepting the loan.

33. Defendant MW intended that plaintiffs rely upon their shared cultural heritage and language as a basis for accepting the loan as the credit terms most favorable to them.

34. Plaintiffs were unaware of the falsity of defendants' representations.

35. Plaintiffs, with English being their second language and having no professional and little practical experience with mortgage loans, had a right to rely upon the aforesaid misrepresentations of MW.

36. Plaintiffs aforesaid reliance proximately caused plaintiffs' injury in the form of increased credit costs.

37. Defendant Countrywide, with the assistance of table funding lenders like MW, has engaged in a pattern and practice of selling high price loans to borrowers who qualify for better credit terms with the sole purpose of increasing their profits at borrowers' expense.

38. To the extent that defendants were engaged in a joint venture to secure loans on the basis of profit rather than the financial well being of their borrowers, defendants were each liable for the acts of the other in a scheme to defraud borrowers like plaintiffs.

39. Defendants are liable to Plaintiffs for damages as follows:

   a. Broker's fee;

   b. The differential between the monthly payment plaintiffs would have qualified for and the monthly payment given to them;

   c. Actual and treble damages

7

Dated: May 24, 2010 /s/Matthew Weisberg
WEISBERG LAW, P.C.
Matthew Weisberg, Esquire
Pa. Id. No. 85570
7 S. Morton Ave.
Morton, PA 19070
(610) 690-0801
Attorney for Plaintiffs