IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREG NULMAN and          :
TATYANNA KNYAZHESKY,     :
                          :
        Plaintiffs,       :
                          :
     v.                   :          CIVIL ACTION NO. 2:09-cv-01503-JF
                          :
MONEY WAREHOUSE, INC. and :
COUNTRYWIDE BANK, FSB    :
                          :
        Defendants.       :

**REPLY MEMORANDUM OF LAW OF DEFENDANT
COUNTRYWIDE BANK, FSB IN FURTHER SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Countrywide Bank, FSB ("Countrywide"), by its undersigned

counsel, respectfully submits this reply memorandum of law in further support of its

motion for summary judgment.

**I.     INTRODUCTION**

In their opposition brief, plaintiffs assert a litany of half-baked arguments

to try to save their rescission claim under the federal Truth in Lending Act ("TILA")

from dismissal as time-barred.  As explained herein, each one of these arguments is

fatally flawed.

Plaintiffs also have no persuasive response to Countrywide's arguments

that the TILA rescission claim would fail as a matter of law even were it not time-barred.

As Countrywide explained in its opening memorandum, a number of courts faced with

Notices of Right to Cancel virtually identical to those at issue here have concluded that

they *were* clear and conspicuous, and therefore complied with TILA.  Plaintiffs cite no

factually apposite cases to the contrary, and make no challenge to the sound reasoning of the cases on which Countrywide relies.

Moreover, as Countrywide explained, *new* Notices of Right to Cancel that indisputably complied with TILA were sent to plaintiffs just days after their loan closing. Plaintiffs' principal response regarding these new Notices is an eleventh-hour assertion that the new Notices were the result of forgery. Plaintiffs' forgery claim should be rejected because it was not pled but rather just now asserted in plaintiffs' summary judgment opposition brief, and, in any event, there is no evidence to support it.

Finally, plaintiffs have all but abandoned their claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"). Plaintiffs do not try to refute any of Countrywide's arguments for dismissal of the UTPCPL claim, but rather they have changed the claim and narrowed it such that it is premised on the same alleged facts that form the basis for their TILA claim. This Court has repeatedly rejected attempts by plaintiffs to bootstrap alleged TILA violations into UTPCPL claims. In any event, the alleged facts that form the basis for plaintiffs' TILA claim do not meet critical and indispensable elements of a UTPCPL claim, such as the existence of a misrepresentation of material fact, and justifiable reliance by plaintiffs.

## II.     ARGUMENT

### A.     The Court Should Reject Plaintiffs' Various Attempts To Argue That Their TILA Claim Is Not Time-Barred

In its opening memorandum, Countrywide explained that plaintiffs' claim for TILA rescission is barred by the three-year statute of repose under 15 U.S.C. § 1635(f). (Countrywide Mem. pp. 6-7). Plaintiffs' various attempts to refute this point are meritless.

1.    **The Three-Year Statute Of Repose Under Section 1635(f) Is *Not* Subject To The "Relation Back" Doctrine**

In its opening memorandum, Countrywide explained that plaintiffs may not argue that their TILA rescission claim "relates back" to the date on which they filed their original complaint in this action against Countrywide Home Loans, Inc. ("CHL") because the three-year period under TILA is not subject to tolling principles, such as the "relation back" doctrine. (*Id.* pp. 7-9).

In response, plaintiffs argue that, contrary to the United States Supreme Court and other authority cited in Countrywide's opening brief (*see* pp. 7-9), the three-year period under Section 1635(f) *is* subject to equitable tolling and the "relation back" doctrine. (Pltfs. Mem. pp. 2-3). In support of this argument, plaintiffs cite *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3d Cir. 1998).

*Ramadan*, however, did not involve the three-year period under Section 1635(f) for rescission under TILA, but rather involved 15 U.S.C. § 1640(e), which provides for a one-year statute of limitations for claims for money damages under TILA. In fact, the *Ramadan* court specifically distinguished Section 1635(f), and recognized that the United States Supreme Court in *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), held that Section 1635(f) was a statute of repose. 156 F.3d at 505. As the *Ramadan* court explained: "The Court [in *Beach*] held that Congress had explicitly linked the right and the remedy in [Section 1635(f)], and therefore the right to sue expired at the end of the period. As discussed above, that is not the case [with Section 1640(e)]." *Id.*

Ironically, plaintiffs assert in their opposition memorandum that "§ 1640 should not be confused with § 1635" (p. 2 n.1), and yet that is precisely what plaintiffs

have done by trying to rely on *Ramadan*. *Ramadan* is clearly inapposite and provides no support for plaintiffs' position.

Plaintiffs ignore almost all of the cases that Countrywide cited in its opening memorandum in which courts have held that Section 1635(f) is not subject to the relation back doctrine. The one case that plaintiffs do try to address is *Miguel v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002). Specifically, plaintiffs argue that some courts have disagreed with the *Miguel* court's characterization of Section 1635(f) as "jurisdictional." (Pltfs. Mem. pp. 7-8). As an initial matter, courts within *this* Circuit agree with the *Miguel* court's characterization. *See, e.g., In re Meyer*, 379 B.R. 529, 541 (Bankr. E.D. Pa. 2007) (expiration of three-year period under Section 1635(f) constituted "jurisdictional defect"). Moreover, it ultimately is irrelevant whether Section 1635(f) is characterized as "jurisdictional." The critical point – on which courts uniformly agree – is that Section 1635(f) is a statute of repose which is not subject to tolling on any basis, including the "relation back" doctrine. *See In re: Community Bank of Northern Virginia & Guaranty Bank Second Mortgage Litig.*, 467 F. Supp. 2d 466, 482 (W.D. Pa. 2006) ("Regardless of whether the three year limitation under Section 1635(f) is styled as jurisdictional, or as simply creating a substantive right not subject to tolling, it is clear that, upon the expiration of three years, the right of rescission is extinguished and cannot be revived through any procedural mechanism," such as Rule 15(c)).

Plaintiffs also argue that *Miguel* is no longer precedential because it purportedly was overruled by certain Official Staff Commentary issued in 2004 by the Federal Reserve Board. (Pltfs. Mem. pp. 7-8). Even were plaintiffs correct (which, as explained *infra*, they are not), the Commentary to which they refer relates *only* to the

issue – which the *Miguel* court addressed in a separate part of its opinion – of whether a rescission demand served on an agent of the creditor can effectuate rescission as against the creditor.  (Pltfs. Mem. p.4 n.4).  Thus, the issue addressed in the Commentary has nothing to do with the *Miguel* court's conclusion that Section 1635(f) is not subject to tolling under the relation back doctrine or otherwise.  As such, there is no basis for plaintiffs' argument that this aspect of the *Miguel* decision was overruled by this Commentary.  Perhaps the best proof of this point are all of the cases (several of which are cited in Countrywide's opening memorandum) decided *after* the Federal Reserve issued this Commentary in 2004 in which courts continued to hold that Section 1635(f) is not subject to tolling under the relation back doctrine or otherwise.

> **2.      Plaintiffs May Not Avoid Dismissal Of The TILA Rescission Claim By Arguing That Their Various Filings In This Action Constituted Their Rescission Demand**

Plaintiffs assert for the first time that "[t]he original (and First Amended) complaint" filed against CHL in this action "was Plaintiffs' demand for rescission" to Countrywide.  (Pltfs. Mem. p. 3).  Therefore, they argue, their suit for rescission against Countrywide was timely because courts have held that, as long as a demand for rescission is made within three years of the loan closing, a lawsuit for rescission is timely if it is filed within one year of the rescission demand.  (*Id.*).  Plaintiffs' argument is flawed on a number of levels.

As an initial matter, even construing plaintiffs' original complaint against CHL as the rescission demand to Countrywide, that complaint was filed on April 7, 2009.  Countrywide thereafter would have had 20 days – or until April 28, 2009 – to act on the notice of rescission.  15 U.S.C. § 1635(b).  Accepting plaintiffs' contention that they then had one year to bring an action against Countrywide, plaintiffs would have had to have

sued Countrywide by April 28, 2010.  Yet, they did not file their second amended

complaint – which was the first pleading in which they named Countrywide a defendant –

until May 25, 2010.  Thus, even under plaintiffs' newly-minted analysis, their TILA

rescission claim still would be untimely.

Realizing this fact, plaintiffs try to argue that the filing of their motion for

leave to file their second amended complaint (filed on March 29, 2010) constituted the

operative date for the filing of the second amended complaint itself.  (Pltfs. Mem. p. 3).

Although courts have held that the filing of a motion for leave to amend a pleading can

toll the statute of limitations on the claims asserted in the proposed amended pleading,

here, as Countrywide has explained, the statute of repose for TILA rescission is not

subject to tolling for any purpose whatsoever.  (Countrywide Mem. p. 7 (citing *Beach v.*

*Ocwen*, 523 U.S. 410 (1998)).  Moreover, the only way a motion for leave to file an

amended complaint can toll the statute of limitations is if the motion is "accompanied by

the proposed amended complaint." *In re One Meridian Plaza Fire Litig.*, 1993 WL

308726, at *2 (E.D. Pa. Aug. 12, 1993).  Here, plaintiffs' motion for leave to file the

second amended complaint (docket no. 18) was *not* accompanied by a copy of the

proposed second amended complaint.

Plaintiffs also argue for the timeliness of their TILA rescission claim on

the ground that the second amended complaint (filed on May 25, 2010) was filed within a

year of the filing of their *first* amended complaint (filed on July 30, 2009).  There can be

no dispute, however, that the TILA rescission request contained in the first amended

complaint was untimely because the date it was filed – July 30, 2009 – was more than

three years after the date of plaintiffs' loan closing (June 9, 2006).  Given that the

rescission request in the first amended complaint was untimely, it cannot serve as the basis for a one-year extension of plaintiffs' time for suing Countrywide for rescission. *Payne v. EquiCredit Corp. of Am.*, 2002 WL 32348251, at *4 (E.D. Pa. Apr. 12, 2004) (additional one-year period for bringing TILA rescission lawsuit following lender's failure to act on rescission demand requires that demand itself was "timely").

In addition to these defects in plaintiffs' argument, the rescission demands in plaintiffs' original and amended complaints were not directed to Countrywide, but rather were directed to CHL, the servicer of plaintiffs' loan. As Countrywide explained in its opening memorandum, the court in *Miguel v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002), specifically rejected the argument that a rescission demand to a loan servicer can constitute a valid rescission demand against the loan holder. (Countrywide Mem. p. 9 n.5). Under facts virtually identical to those here, a court within this Circuit has reached the same conclusion, reasoning as follows:

> In addition to monetary damages, the Plaintiffs desire to rescind this loan. Countrywide argues that it is too late for that: TILA rescission claims are subject to a three-year statute of repose. Those three years for this claim expired on May 13, 2007. Countrywide's Brief, 7-11. While Plaintiffs may have made a formal demand to rescind before that date, it failed to make that demand upon the present holder. Instead, it served that request upon the prior holder of the loan, Argent, and the servicer, Countrywide. Plaintiffs sought to amend the complaint to add the present holder, Deutsche, but by that time, the cause of action had expired making any amendment futile. There is then no basis upon which Plaintiffs may rescind this loan.

*In re Meyer*, 379 BR 529, 551 (Bankr. E.D. Pa. 2007).

Despite this case law, plaintiffs argue that a rescission demand to a loan holder's servicer or agent is sufficient as against the loan holder itself. (Pltfs. Mem. pp.

3-4).[1]  The authorities that plaintiffs cite in support of this assertion, however, are unpersuasive.  Plaintiffs rely on *Kukonu v. Beneficial Finance Co.*, Clearinghouse No. 22,524 (D. Hawaii), an unreported trial court opinion from 1978, which – to the extent at all factually apposite here – was overruled by the Ninth Circuit's decision in *Miguel*.[2]  Plaintiffs also cite *Garedakis v. Indymac Bank*, 2004 WL 2254676 (N.D. Cal. Oct. 4, 2004).  In *Garedakis*, however, the borrowers – unlike plaintiffs here – filed their rescission lawsuit against the creditor within the three-year period under Section 1635(f).  Moreover, to the extent *Garedakis* can be read for the proposition for which plaintiffs cite it, it conflicts with *Miguel*, which was controlling in that case.

Finally, plaintiffs rely on certain Official Commentary of the Federal Reserve Board.  This Commentary, however, does not appear to have been followed by any court in any reported decision, and, indeed – as cases such as *Meyer* demonstrate – courts continue to follow the rule articulated by the *Miguel* court.

Moreover, the Commentary is wholly inapposite to the present circumstances.  The Commentary plainly addresses to whom the borrower must send the executed Notice of Right to Cancel that he or she received at closing within the three business day rescission period.  *See* 12 C.F.R. § 226.23(b)(1) ("Notice of right to

---

[1]     Plaintiffs also make the bald assertion that the rescission demand to CHL was effective against Countrywide because CHL and Countrywide were "one in the same (alter ego's)." (Pltfs. Mem. p. 3).  Plaintiffs, however, never pled nor adduced any evidence in support of this alter-ego theory, and it therefore should be rejected.  Nor is there any evidence of plaintiffs' speculative assertion that CHL may have conveyed the original complaint to Countrywide (*id.*), which CHL did not.

[2]     Plaintiffs did not attach a copy of the unreported *Kukonu* opinion to their summary judgment opposition brief, and, despite reasonable efforts, Countrywide has been unable to obtain a copy.

rescind.  In a transaction subject to rescission, a creditor shall deliver two copies of the

notice of the right to rescind to each consumer entitled to rescind"); Official Staff

Commentary section § 226.23(a)(2)-1 ("The consumer must exercise the right of

rescission in writing but not necessarily on the notice supplied under section

226.23(b))."). Thus, the Commentary provides that "[t]he creditor may designate an

agent to receive the notification so long as the agent's name and address *appear on the

notice provided to the consumer under section 226.23(b)*." *Id.* (emphasis added).

Consistent with the Commentary, the original Notices of Right to Cancel that plaintiffs

received at closing, as well as the new Notices of Right to Cancel delivered to plaintiffs

on June 16, 2006, provided that in order to exercise the right of rescission, plaintiffs had

to send an executed Notice of Right to Cancel to: "Money Warehouse, Inc., 73 James

Way, Suite 120, Southampton, Pennsylvania 18966."[3]

      The Commentary provides the borrower with some latitude as to where to

send the executed Notice of Right to Cancel if the Notices of Right to Cancel received by

the borrower at closing do not specify an address.  This is for the logical reason that if the

borrower fails to exercise that right within the three day period the borrower loses the

right to rescind.  Consequently, the Commentary does not purport to address the situation,

as in the present case, where the borrower attempts to rescind the loan *more than* three

business days after entering into the loan.[4]  After the expiration of the three-day period,

---

[3]    Had plaintiffs executed and returned a Notice of Right to Cancel within either
three-day period, it would have been honored consistent with the Commentary.

[4]    This also was the situation in *Miguel*.  Because *Miguel* addressed a situation
different from that addressed in the Commentary, it is not surprising that the
Commentary contains no mention of *Miguel*.

the transaction has been consummated and the ownership and servicing rights to the loan may be transferred. *See* Official Staff Commentary section 226.23(c)-1 (noting that the creditor may not disburse loan proceeds until the three business day period has run). Thus, after the expiration of the three-day period, the address set forth in the Notices of Right to Cancel may no longer be the valid address to which the borrower may send his rescission notice and the Commentary does not address such a situation.

At its heart, plaintiffs' argument is premised upon the demonstrably false supposition that they did not know and could not have known where to send their rescission demand (whether in the form of a complaint or otherwise). If plaintiffs really were unaware of who owned their loan, before commencing this litigation (or even after commencing it) they could have demanded that CHL either confirm that it owned the loan or identify the owner. *See* 15 U.S.C. § 1641(f)(2) ("Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."); 12 U.S.C. § 2605(e) (allowing borrower to submit a qualified written request to servicer for information that the servicer must provide within sixty business days). Simply stated, given the fact that plaintiffs were represented by counsel since early 2009, there is simply no reason they could not have learned, if they already did not know, that Countrywide Bank owned their loan and demanded rescission from it within the three year statutorily mandated period.

Plaintiffs also argue that service of a timely rescission demand (*i.e.*, the original complaint) on Money Warehouse, Inc. ("MW"), the lender that originated their loan, constitutes a timely demand on Countrywide. Courts have consistently rejected this

argument by borrowers. In *Harris v. OIS Financial Services, Inc.*, 595 F. Supp.2d 885 (N.D. Ill. 2009), for example, the borrowers – like plaintiffs here – argued that their TILA rescission demand to the originating lender was timely, and that it therefore did not matter that the borrowers did not bring suit against the assignee of the loan until after the expiration of the three-year period statute of repose under Section 1635(f). *Id.* at 897. The court rejected this argument, reasoning that "TILA explicitly states that an assignee of a mortgage is 'subject to all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage . . . .' 15 U.S.C. § 1641(d)(1)." Based on this language, the court rejected the borrowers' position "that assignees should not be entitled to the same rights to notice of rescission as original creditors." *Id.* The court concluded, therefore, that a borrower cannot effectuate notice of rescission to the assignee "simply by notifying" the original lender. *Id.* at 898. Indeed, it would make little sense to demand rescission from the original lender when it no longer holds the loan, and is therefore powerless to rescind it.

### 3.   Plaintiffs' Argument That Countrywide Waived Its Statute Of Repose Defense Is Frivolous

Finally, plaintiffs argue that Countrywide has waived the issue of the statute of repose because CHL (not Countrywide, which could not have raised it, as it was not yet a party to the case) did not raise the issue in opposition to plaintiffs' motion for leave to amend. (Pltfs. Mem. p. 5).

The purported factual premise of plaintiffs' argument, however, is flat out wrong. Indeed, plaintiffs' argument constitutes a blatant misrepresentation to the Court. In a lengthy discussion, CHL specifically raised the issue of the statute of repose in opposition to plaintiffs' motion for leave to amend. (CHL's Opp. to Mot. for Leave to

File Sec. Am. Compl. (docket no. 19), pp. 8-11). Plaintiffs' waiver arguments is therefore frivolous and should be stricken.

**B.     Plaintiffs Make No Persuasive Arguments In Support Of Their Contention That The Notices Of Right To Cancel Here Were Not Clear And Conspicuous**

Even were the TILA rescission claim not time-barred, it still would fail as a matter of law. As Countrywide explained in its opening memorandum, a number of courts, including the First Circuit Court of Appeals in *Palmer v. Champion Mortgage*, 465 F.3d 24 (3d Cir. 2006), have held that Notices of Right to Cancel virtually identical to those here fully complied with TILA. (Countrywide Mem. pp. 10-12).

In response, plaintiffs attempt to rely on *Williams v. Empire Funding Corp.*, 109 F. Supp.2d 352 (E.D. Pa. 2000). *Williams*, however, involved a Notice of Right to Cancel that — in addition to including the TILA three-day rescission notice — included a directly contradictory disclosure pursuant to state law expressly stating that the borrower had just one day to rescind. *Id.* at 359-60.[5] There is no analogous contradiction in the Notices of Right to Cancel here, and *Williams* is therefore inapposite.

---

[5]     Specifically, the Notice of Right to Cancel in *Williams*, after setting forth the TILA disclosure stating that the borrower had three days to rescind, stated as follows:

> NOTICE TO BUYER: (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT ... (4) YOU MAY RESCIND THIS CONTRACT, SUBJECT TO LIABILITY FOR ANY LIQUIDATED DAMAGE PROVISION THEREOF AUTHORIZED BY LAW, NOT LATER THAN FIVE (5) P.M. ON THE BUSINESS DAY FOLLOWING THE DATE THEREOF BY GIVING WRITTEN NOTICE OF RESCISSION TO THE CONTRACTOR AT HIS PLACE OF BUSINESS GIVEN IN THE CONTRACT, BUT IF YOU RESCIND AFTER FIVE (5) P.M. ON THE BUSINESS DAY FOLLOWING,

(continued...)

Plaintiffs also try to challenge the reasoning of the *Palmer* court. Specifically, they argue that the courts in *Johnson v. Chase Manhattan Bank, USA, N.A.*, 2007 WL 2033833 (E.D. Pa. Jul. 11, 2007), and *Aubin v. Residential Funding Co., LLC*, 565 F. Supp.2d 392 (D. Conn. 2008), "noted *Palmer*'s 'objective standard' as flawed." (Pltfs. Mem. p. 8). The Court in neither case did any such thing. Rather, the Courts in these cases simply distinguished the facts of *Palmer*. In *Johnson,* the Court distinguished *Palmer* on the basis that, in contrast to the Notice of Right to Cancel in *Palmer* (and here), the Notice of Right to Cancel in *Johnson* contained no rescission date at all. 2007 WL 2033833 at *3. As the *Johnson* court further explained, "[t]he *Palmer* court itself expressly distinguished the situation it confronted from one in which the notice at issue stated no rescission date at all." *Id.*

In *Aubin*, it was "the confluence of rather unique factors" that led the court to conclude that the Notice or Right to Cancel at issue was not clear and conspicuous. 565 F. Supp.2d at 396. The Notice or Right to Cancel in *Aubin* contained an incorrect date for the end of the rescission period, but the court – citing *Palmer* – explained that "[t]hat error might well have been rectified or corrected by the alternative computational language provided in the Rescission Notice." *Id.* at 397. The additional fact (not present in *Palmer* or here) that led to the *Aubin* court's decision was that the third business day

---

(...continued)
> YOU ARE STILL ENTITLED TO OFFER DEFENSES IN MITIGATION OF DAMAGES AND TO PURSUE ANY RIGHTS OF ACTIONS OR DEFENSES THAT ARISE OUT OF THE TRANSACTION.

109 F. Supp.2d at 359.

following the loan closing was a Saturday, and the notice did not explain that Saturday

was a "business day" for purposes of TILA. *Id.* at 398.

> **C.      Equally Unavailing Are Plaintiffs' Arguments Regarding The *New*
> Notices Of Right To Cancel That Were Sent To Them**

As Countrywide explained in its opening brief, Countrywide sent plaintiff

additional Notices of Right to Cancel dated June 16, 2006 shortly after the loan closing,

and these Notices indisputably complied with TILA. (Countrywide Mem. pp. 12-13).

In response, plaintiffs argue that the issuance of these new Notices of

Right to Cancel constituted an attempt to invoke the "Correction of Errors" defense, and

Countrywide did not satisfy the requirements of this defense. (Pltfs. Mem. pp. 5-6).

Plaintiffs themselves, however, admit that the "Correction of Errors" defense does not

apply to rescission (*id.*), and it is therefore irrelevant that (according to plaintiffs)

Countrywide did not comply with the requirements of the defense.

The relevant requirements may be found in the TILA rescission statute

itself. The statute specifically contemplates the possibility that a Notice or Right to

Cancel – like the June 16, 2006 Notices here – may properly be delivered to the borrower

*after* closing. As one court recently explained:

> TILA provides for a right to rescind "until midnight of the
> third business day following the consummation of the
> transaction or the delivery of the information and rescission
> forms required under this section together with a statement
> containing the material disclosures required under this
> subchapter, *whichever is later.*" 15 U.S.C. § 1635(a)
> (emphasis added); *see* 12 C.F.R. § 226.23(a)(3) ("The
> consumer may exercise the right to rescind until midnight
> of the third business day following consummation, delivery
> of the [notice of right to rescind], or delivery of all material
> disclosures, whichever occurs last." (footnote omitted).
> Thus, TILA contemplates delivery of the required
> disclosures and forms at a time other than the
> consummation of the transaction. If such delivery does not

> take place at all, then a right to rescind exists for three
> years after the transaction's consummation.

*Simmons v. Mortgage Elec. Registration Sys., Inc.*, 2010 WL 428784, at *3 (D. Minn.

Feb. 2, 2010).  Thus, in *Simmons*, the court held that the delivery of the Notice of Right

to Cancel to the borrowers six days after closing complied with TILA.  *Id.  Accord In re*

Mourer, 309 B.R. 502, 506 (W.D. Mich. 2004) ("the material disclosures, including

notice of the right to rescind, *were* delivered to the Mourers, albeit several weeks after the

closing.  Hence, under 12 C.F.R. § 226.23(a)(3), their right to rescind was extended until

midnight of the third business day following delivery of the disclosures and notice.").

So too here, the June 16, 2006 Notices of Right to Cancel were delivered

to plaintiffs, thus extending plaintiffs' right to rescind until the third business day

following delivery, and satisfying the requirements of TILA.

Plaintiffs argue that they did not receive the June 16, 2006 Notices of

Right to Cancel, even though they admit that their signatures appear on them.  (Pltfs.

Mem. p. 6).  As Countrywide explained in its opening memorandum, this Court and the

Third Circuit have held that a borrowers' signed acknowledgement of receipt of a TILA

disclosure creates a presumption of delivery, which cannot be rebutted by self-serving

testimony.  (Countrywide Mem. pp. 12-13).  Plaintiffs do not even attempt to address the

cases cited by Countrywide on this issue.

Instead, plaintiffs try to rely on *Vaden v. Indymac Bank, F.S.B.*, 2003 WL

22136306 (N.D. Ill. Sept. 16, 2003), but the Seventh Circuit at the time of the *Vaden*

decision apparently had a rule permitting a plaintiff to get past summary judgment by

simply denying receipt.  *See id.* at *5 ("'When a plaintiff unequivocally denies receipt of

the letter, there is a genuine issue of material fact.' *Jones v. Citibank*, 844 F. Supp. 437,

442 (N.D. Ill. 1994) (citing *In re Longardner & Assocs.*, 855 F.2d 455, 459 (7th Cir. 1988)). The 'denial of receipt alone does not rebut the presumption, but merely creates a question of fact.' *Longardner*, 855 F.2d at 459 (citation omitted).").[6] As evidenced by decisions of this Court that were cited in Countrywide's opening memorandum, the rule within the Third Circuit is that a plaintiff's testimony denying receipt alone is *not* enough to withstand summary judgment. *See, e.g.*, *Strang v. Wells Fargo, N.A.*, 2005 U.S. Dist. LEXIS 14135, at * 10 (E.D. Pa. July 13, 2005) (summary judgment granted against borrowers on TILA notwithstanding "borrower's testimony that disclosures were not provided"), *aff'd*, 266 Fed. Appx. 108 (3d Cir. Feb. 20, 2008); *Oscar v. Bank One, N.A.*, 2006 WL. 401853, at *3 (E.D. Pa. Feb. 17, 2006) (granting summary judgment on TILA claim, reasoning: "Plaintiffs' execution of the Federal Truth in Lending Disclosure Statement creates a presumption that those disclosures were, in fact received and Alvin Oscar's statement to the contrary is not, by itself, sufficient to rebut that presumption"). In fact, since *Vaden* was decided in 2003, the Seventh Circuit too has changed its rule such that it is consistent with that of the Third Circuit. *See McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1021 (7th Cir. 2004) (affirming grant of summary judgment against borrower, and rejecting notion that presumption of delivery can "be rebutted by mere denial of receipt" by borrower).

Realizing that their mere denial of receipt is not enough, plaintiffs – for the first time in this action – contend that the June 16, 2006 Notices of Right to Cancel were forgeries. (Pltfs. Mem. pp. 6-7). The fact that plaintiffs are just now raising their

---

[6]     Plaintiffs also inexplicably cite *Kramer v. Marine Midland Bank*, 559 F. Supp. 273 (S.D.N.Y. 1983), which did not involve any discussion of the presumption of delivery. Thus, *Kramer* is irrelevant here.

forgery claim is alone grounds for rejecting the claim. *See Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp.2d 366, 371 n.3 (E.D. Pa. 2003) (refusing to consider new arguments raised by plaintiff in opposition to summary judgment motion, reasoning: "Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers.").

Moreover, there is simply no evidence beyond plaintiffs' bare and speculative allegation to support the forgery claim. On that ground too the Court should reject the claim. *See Jackson v. Allstate Ins. Co.*, 441 F. Supp.2d 728, 734 (E.D. Pa. 2006) ("Neither Jackson's bald allegation of forgery nor her testimony that she cannot remember signing the rejection form, nor the combination of both, satisfy her burden to preclude a federal grant of summary judgment.").

Finally, plaintiffs argue that the June 16, 2006 Notices of Right to Cancel were defective because, after plaintiffs' loan had been assigned to Countrywide, the Notices continued to list MW as the party to which a rescission notice should be sent. (Pltfs. Mem. p. 7). As discussed above, Notices of Right to Cancel delivered to a borrower in connection with the loan closing provide the borrower with advice as to whom he or she should direct an executed Notice of Right to Cancel prior to the expiration of the three-business day period discussed therein. At that point, MW *was* still the correct entity to which to direct the Notice of Right to Cancel. As explained previously, MW had not even funded the loan as of that point. *See* Official Staff Commentary section 226.23(c)-1. In addition, the loan was still being evaluated at that time by Countrywide as part of the purchasing process. (J. Grieves Dep. p. 41, attached hereto as Exhibit A). In fact, it was MW – not Countrywide – that sent the new Notices

of Right to Cancel to plaintiffs. (*Id.*) Thus, MW logically also was the entity to which to

send an executed Notice of Right to Cancel at that time. (*Id.*). Moreover, neither

*Ameriquest Mortgage Co. v. Hernandez*, 2003 WL 22925278 (10th Cir. Dec. 11, 2003) –

cited by plaintiffs in support of this argument – nor any other case of which Countrywide

is aware, remotely supports the notion that a Notice of Right to Cancel is defective if it

continues to list the originating lender after the loan has been assigned.

> **D.      Plaintiffs' Attempt To Recast Their UTPCPL Claim Cannot Save It
>              From Dismissal**

In their opposition brief, plaintiffs significantly change and narrow their

UTPCPL claim. Specifically, they now confine their UTPCPL claim to the same

allegations that form the basis for their TILA claim. (Pltfs. Mem. p. 7). As an initial

matter, and as plaintiffs concede, this Court has repeatedly rejected the notion that a

TILA violation constitutes a *per se* violation of the UTPCPL. *See, e.g., Sherk v.*

*Countrywide Home Loans, Inc.*, No. 08-5969, 2009 WL 2412750, at *8 (E.D. Pa. Aug. 5,

2009) (Plaintiffs "have offered no legal authority for the proposition that violations of

TILA . . . constitute *per se* violations of the UTPCPL."); *Garczynski v. Countrywide*

*Home Loans, Inc.*, 656 F. Supp.2d 505, 514 (E.D. Pa. 2009) ("Many judges in this

District have rejected Plaintiffs' argument that TILA . . .[violations] are per se violations

of the UTPCPL.") (collecting cases).

Nor do the facts that form the basis for the alleged TILA violation state a

UTPCPL claim. As Countrywide explained in its opening brief, a claim under the

UTPCPL catchall provision, such as plaintiffs' here, requires proof of the elements of

common law fraud, including a misrepresentation of material fact, and justifiable reliance

by the plaintiffs. (Countrywide Mem. p. 14). As explained above, a number of courts

have held that the precise alleged defect in the Notice of Right to Cancel at issue here, as a matter of law, does *not* mean that the Notice is non-compliant with TILA's "clear and conspicuous" standard.  If the Notice is clear and conspicuous, it logically cannot constitute a misrepresentation of material fact for purposes of the UTPCPL.

Even assuming *arguendo* that the Notice *did* contain a misrepresentation of material fact, plaintiffs have not and cannot present any evidence that they relied in any way on the alleged misrepresentation.  On that ground as well, the UTPCPL claim fails as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Countrywide's opening memorandum, the Court should grant Countrywide's summary judgment motion, dismiss all of plaintiffs' claims against Countrywide with prejudice, and grant Countrywide such other relief as the Court deems proper.

/s/ *Martin C. Bryce, Jr.*
Martin C. Bryce, Jr., Esquire
Joel E. Tasca, Esquire
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.864.8238/8188
Facsimile: 215.864.8999
bryce@ballardspahr.com
tasca@ballardspahr.com

*Attorneys for Defendant*
*Countrywide Bank, FSB*

Dated:  September 13, 2010

EXHIBIT A

IN THE UNITES STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


NULMAN, et al.,                    :
                                   :   Civil Action
       Plaintiffs,                 :
                                   :
    - vs -                         :
                                   :   COPY
MONEY WAREHOUSE, INC.;             :
COUNTRYWIDE HOME                   :
LOANS, INC.                        :
                                   :
       Defendants.                 :   NO. 09-1503


          Oral deposition of JAMES GREIVES,

taken at BALLARD SPAHR, LLP, 1735 Market Street,

51st Floor, Philadelphia, Pennsylvania, taken on

Thursday, February 18, 2010, beginning at

approximately 1:00 p.m., before Donna M. Ray,

Registered Professional Reporter, Certified Court

Reporter and Notary Public in and of the

Commonwealth of Pennsylvania.



          SUMMIT COURT REPORTING, INC.
       Certified Court Reporters and Videographers
            1500 Walnut Street, Suite 1610
            Philadelphia, Pennsylvania 19102
    (215) 985-2400 * (609) 567-3315 * (800) 447-8648
                www.summitreporting.com

JAMES GREIVES

1   business day following the latest of three events

2   listed above, which I believe those three events to

3   be accurate.

4       Q.   I'm sorry.  I don't understand.

5            Where were you reading?

6       A.   I'm sorry.  It says that following the

7   date of June 12th, if you wish to cancel by

8   telegraph, blah, blah, blah, through midnight of

9   June 12th, referring to D-5.  Then in parenthesis,

10  "or midnight of the following business day

11  following the latter of the three events listed

12  above," which would be numbers one, two, three with

13  the loan transaction date of June 9, 2006.

14      Q.   So you're saying this notice of right to

15  cancel advises the borrower that they may rescind

16  on June 12th or June 13th?

17      A.   As stated within that document, after the

18  third business day of the three listed events, yes.

19           MR. WEISBERG:  I'll show you D-7.

20                   -  -  -

21           (Whereupon, Exhibit D-7 was marked

22      for identification.)

23                   -  -  -

24  BY MR. WEISBERG:

JAMES GREIVES

1    Q.   D-7 consists of two documents dated at the

2    bottom June 16, 2006.

3              Taking a look at this, why were --

4    and these documents appear to be signed by both

5    plaintiffs.  Why were these generated?  Do you know

6    why these were generated?

7    A.   Yes, I do.

8    Q.   Why?

9    A.   These were generated as a result of the

10   Money Warehouse delivering the loan that we're

11   referring to to Countrywide correspondent for

12   purchase.

13             When the loan is received, it goes

14   through a strenuous evaluation process, a

15   purchasing process.  During that process, our loan

16   purchaser audited these documents, D-5 documents,

17   and determined that the date listed on the D-5

18   document was incorrect.  The loan was suspended.

19   The Money Warehouse was instructed to reopen the

20   rescission period and ask the clients to execute a

21   valid notice of right to cancel with valid dates.

22   Q.   And these are the only two documents we

23   have, which is one signed by Gregory Nulman and one

24   signed by Tatiana.

**JAMES GREIVES**

1          Are there any other notices of right

2   to cancel within your loan file that I do not have?

3      A.   I do not know that.

4      Q.   You would agree with me that giving one to

5   each borrower is a violation of the Truth in

6   Lending Act?

7      A.   Yes.

8      Q.   Is there anything within your file

9   whatsoever that indicates that, in fact, the

10  borrowers came back and had another signing at

11  Money Warehouse?

12     A.   I'm not aware of that.

13     Q.   You would agree with me that if there were

14  forgeries on D-7, that these documents would be

15  invalid?

16     A.   Yes.

17     Q.   You would agree with me that D-5, the June

18  9th date, your underwriting department deemed

19  defective?

20     A.   Incorrect.

21     Q.   Then why did they reissue notices of right

22  to cancel if they didn't deem them to be defective?

23     A.   It was actually our purchasing department

24  reviewing the loan requesting that the rescission

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September 2010, I have caused a true and correct copy of the foregoing Reply Memorandum of Law of Defendant Countrywide Bank, FSB in Further Support of its Motion for Summary Judgment to be served on the following counsel via ECF, and such documents are available for viewing and downloading from the ECF system:

> Robert P. Cocco, Esquire
> ROBERT P. COCCO, P.C.
> 1500 Walnut Street
> Suite 900
> Philadelphia, PA 19103
> rcocco@rcn.com
>
> Matthew B. Weisberg, Esquire
> WEISBERG LAW, P.C.
> 7 South Morton Avenue
> Morton, PA 19070
> mweisberg@ppwlaw.com
>
> *Attorneys for Plaintiffs*

The following individuals were served via first class U.S. mail, postage prepaid:

> Yuri Volin, President
> Money Warehouse, Inc.
> 615 Second Street Pike
> Southampton, PA 18966
>
> Richard J. Weitzman, Esquire
> Law Offices of Richard J. Weitzman, PC
> 3 N. 2[nd] Street, Suite 200
> Philadelphia, PA 19106

> */s/ Joel E. Tasca*
> Joel E. Tasca